# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**RICHARD M. SMITH,**

    **Plaintiff,**

**vs.**                               **Case No.: 4:19-cv-00261-RH-MAF**

**MR. HAND, by his successor,
Officer Pelham, WCI,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Richard M. Smith, an inmate proceeding *pro se* and *in forma pauperis*, initiated this civil rights action on June 7, 2019, and was previously granted leave to amend on two occasions. ECF Nos. 6, 11. Plaintiff's second amended complaint is the operative complaint. ECF No. 13. This Cause comes before the Court upon Defendant's Motion to Dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) maintaining that Plaintiff fails to state a claim upon which relief may be granted. ECF No. 24.

After careful review, for the reasons stated below, the Defendant's Motion to Dismiss, ECF No. 24, should be granted and the instant case dismissed.

### I. Allegations of the Amended Complaint, ECF No. 13

Plaintiff makes allegations against one sole defendant, "Mr. Hand," the "food service director" at "Wakulla Annex." ECF No. 13. Plaintiff does not specify whether he is suing Defendant in his official or individual capacity. Plaintiff is proceeding *pro se* and is entitled to liberal construction, pursuant to Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Plaintiff also clarifies in his response to the motion to dismiss that he intends to sue Defendant in both his individual and official capacities. ECF No. 26, p. 5. Therefore, the Court construes Plaintiff's complaint as a suit against Defendant in both capacities. Plaintiff alleges Defendant refused to include a peanut butter sandwich with his meals on several occasions in violation of his Eighth Amendment right to be free from "cruel and unusual punishment." ECF No. 13.

Plaintiff claims he arrived at Wakulla Correctional Institute ("Wakulla) on December 11, 2018,[1] weighing 164 pounds. Id., p. 5. On January 28, 2019, Plaintiff filed a grievance concerning his weight loss. Id. The director of nursing responded: "After reviewing your chart your weight [has] fluctuated from 153 to 151. If you feel you need a diet pass put in a sick call." Id., p. 5.

---

[1] Plaintiff used this date in his original complaint. ECF No. 1. Although the operative complaint states he arrived in 2019, apparently, it is a typographical error. ECF No. 13.

On February 11, he submitted formal grievance #1902-118-092 "reiterating" his informal grievance that he lost weight and needed a special diet. Id. The grievance was denied: "Your request for administrative remedy or appeal has been reviewed and evaluated. An investigation reveals (IE), if you would like to request a special diet, you need to access the sick call system. Based on the information your request for administrative remedy is denied." Id. Plaintiff maintains that he "did access sick call" but "medical would not put [him] on a special diet." Id. He claims he lost weight because he was only served a "regular tray," which has food portions that were too small. Id.

Plaintiff claims that on February 25, he submitted a grievance appeal, which was denied: ". . . records indicate that you was [sic] issued a diet pass on 2/6/2019 that was clinically indicated." Id., p. 6. Plaintiff alleges that from February 11 through February 28 he did receive a "3,000 calorie diet tray with a peanut butter sandwich on the dinner tray." Id. Then, on February 28, the tray did not have the sandwich; so, he filed a grievance. Id. Plaintiff states that he explained to "Ms. Hand" that he was not receiving the sandwich "to fatten up" and to "put bigger portions of food on [the] tray" because he "lost excessive weight." Id. His request was denied. Id.

According to Plaintiff, Defendant violated his constitutional right by failing to give him the proper amount of food and was denied the sandwich.

Id., p. 7. Plaintiff seeks $10,000 for his alleged "excessive weight loss." Id. Plaintiff does not contribute the "excessive weight loss" to Defendant's actions nor does he allege that he did not receive a 3,000-calorie meal tray. See ECF No. 13, generally.

## II.  Standard of Review

The issue on whether a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556; see also Wilborn v. Jones, 761 F. App'x 908, 910 (11th Cir. 2019). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 556). A complaint that "pleads facts that are 'merely consistent with' a

defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

The pleading standard is not heightened, but flexible, in line with Fed. R. Civ. P. 8 to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). *Pro se* complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005) (quoted in Twombly, 550 U.S. at 558).

One additional principle warrants highlighting: a motion to dismiss does not test the truth of a complaint's factual allegations. As noted above, factual allegations, though not legal conclusions, must be "accepted as true," Ashcroft, 556 U.S. at 678 even when they are "doubtful in fact." Twombly, 550 U.S. at 555. "Instead, it remains true, after Twombly and Iqbal as before, that 'federal courts and litigants must rely on summary judgment and control

of discovery to weed out unmeritorious claims sooner rather than later.'" Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168-69 (1993) (quoted in Yawn v. Sec'y of Dep't of Corr., No. 5:13cv228-RH/EMT, 2017 U.S. Dist. LEXIS 96642, 2017 WL 2691423, at *1 (N.D. Fla. June 21, 2017)).

### III.   Defendant's Motion to Dismiss, ECF No. 24

Defendant asserts that the claim brought against him in his official capacity is barred by the Eleventh Amendment; it is tantamount to bringing forward a suit against the state. ECF No. 24, pp. 6-7. The Florida Department of Corrections (FDC) is a state agency for the purposes of the Eleventh Amendment. Id., p. 7. Defendant further asserts that Plaintiff failed to state a cause of action because he does not sufficiently state an Eighth Amendment violation. Id. According to Defendant, Plaintiff has not alleged any material facts which demonstrate the condition was "extreme." Id., p. 9. Finally, because Plaintiff fails to state a constitutional claim, Defendant is entitled to qualified immunity. Id., pp. 10-11.

### IV.   Plaintiff's Response, ECF No. 26

Plaintiff's response largely restates his claims made in the amended complaint. ECF No. 26. He maintains that Defendant violated the Eighth Amendment because he received conflicting statements on whether he

could "[get] a peanut butter sandwich with a 3000 [calorie] evening meal." Id., p. 7.

## V. Discussion

### A. Plaintiff's Official Capacity Claim is Barred by the Eleventh Amendment

The Eleventh Amendment bars suits against a state without the consent of the state. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Florida's sovereign immunity extends to its agencies, subdivisions, or officers. See Alabama v. Pugh, 438 U.S. 781, 782 (1978); Fitzgerald v. McDaniel, 833 F.2d 1516 (11th Cir. 1987). That "bar exists whether the relief sought is legal or equitable." Papasan v. Allain, 478 U.S. 265, 276 (1986). Naming a government official in his official capacity is the equivalent of naming the governmental entity itself. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). A state official, however, may be sued in his official capacity when the suit alleges a constitutional violation by the official, acting in his official capacity and seeks only prospective injunctive relief. See Grizzle v. Kemp, 634 F.3d 1314, 1319 (11th Cir. 2011). Section 1983 does not override the states' Eleventh Amendment immunity; instead, a federal court's remedial power in such actions brought against a state is limited to prospective injunctive relief. Quern v. Jordan, 440 U.S. 332, 338 (1979).

For the purposes of this inquiry, the FDC is a state agency, and by extension so is the state prison. Defendant, employed as the food service director for the prison, therefore, benefits from Eleventh Amendment Immunity. Plaintiff does not seek injunctive relief against Defendant; he only seeks money damages. Eleventh Amendment Immunity bars this type of relief. Moreover, because Plaintiff is no longer housed at Wakulla, the issue of injunctive relief would be moot. It is, thus, futile for Defendant to further amend this claim. Accordingly, Plaintiff's official capacity claim warrants dismissal.

B. <u>Plaintiff Fails to State an Eighth Amendment Claim</u>

Plaintiff's claims arise under the Eighth Amendment's prohibition against cruel and unusual punishment, which requires that prisoners be afforded "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994)." To prevail, a plaintiff must prove a (1) condition of confinement that inflicted unnecessary pain or suffering (the objective component), (2) deliberate indifference to that condition (the subjective component), and (3) causation. <u>LaMarca v. Turner</u>, 995 F.2d 1526, 1535 (11th Cir. 1993) (citations omitted). The objective component requires a showing a condition is "extreme," "pose[s] an unreasonable risk of serious damage to his future

health or safety," and that the "risk of which he complains is not one that today's society chooses to tolerate." Chandler v. Crosby, 379 F.3d 1278, 1289-90 (11th Cir. 2004) (internal citations omitted).

The subjective component requires a showing that prison officials were deliberately indifferent to a known, substantial risk of serious harm. Farmer v. Brennan, 511 U.S. at 843. To demonstrate deliberate indifference, a prison official's conduct must be "more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003). It must be a culpable state of mind to unnecessarily and wantonly inflict pain or harm to a prisoner. Wilson v. Seiter, 501 U.S. at 302-03. Finally, Plaintiff must show that Defendants' "acts or omissions were the cause -- not merely a contributing factor -- of the constitutionally infirm condition" and that his injuries were proximately caused by the deliberate indifference. LaMarca, 995 F.2d at 1538-39.

A claim alleging the deprivation of food may only rise to the level of a constitutional violation where the prisoner is denied the "minimal civilized measure of life's necessities." Wilson v. Seiter, 501 U.S. 294, 303 (1991). "A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required." Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977).[2]

---

[2] Decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to October 1, 1981, are binding precedent in the Eleventh Circuit. Bonner v. Prichard, 661 f.2d 1206, 1207 (1981).

On March 8, Plaintiff filed grievance #122-1903-0100, claiming Defendant had not served him the peanut butter sandwich with his meals since February 11. ECF No. 13, p. 8. Plaintiff claimed Defendant told him all inmates receive level scoops, no more no less, and that peanut butter sandwiches were no longer included in a 3,000-calorie diet. Id. The grievance was denied: "if you are on a 3000 diet your portions will reflect that. Menu is served as written. No more no less. If peanut is on the menu you will receive it. If not you will not." Id. The denial to Plaintiff's appeal explained, in part:

> Ms. Hand, FSD was contacted and as stated in the response for your informal, the 3000-calorie diet does not get a peanut butter sandwich. As of October 22, 2017, the menu changed for regular compound as well as therapeutic diets. 4000 calorie diets did receive a sandwich however this diet no longer exists. The revised 3000 calorie diet does NOT receive a peanut butter sandwich. The diet you are prescribed calls for an extra scoop of starch that differs from the regular tray, that is it. No sandwiches will be distributed for this diet. Food service is not responsible [for] any of your medical issues. Any issues concerning this should be brought to the attention of the medical staff.

Id., p. 9.

On March 19, Plaintiff filed formal grievance #1903-118-164 against food service, Angela Gaskens, Brenda Patterson, and Defendant. Id., p. 10. He referenced his prior grievances and argued he previously received a peanut butter sandwich "every night at dinner time." Id. He insisted that the

3,000-calorie tray did include the sandwich or that he should get "bigger portions" of food. Id. The grievance was denied, "the Master Menu is being served as written . . . meets the Dietary Reference Intakes as established by the Food and Nutrition Board of the National Academy of Sciences as far as the serving size on most diet menus the 3000 calorie diet receives a regular tray with a snack at the evening meal." Id., p. 11.

On May 28, Plaintiff filed grievance #209-1905-0185 where he complained of "excessive weight loss" and that he was only getting regular portions of food marked as a 3,000-calorie tray. Id., p. 13. His grievance was approved, "some portions of your diet are slightly increased." Id. Then, on June 1, while housed at the Reception Medical Center, Plaintiff filed grievance #1906-209-107 raising similar issues – that he still was not receiving a peanut butter sandwich and should receive double the amount of food than a regular tray. Id.

Aside from his allegation that he received an inadequate amount of calories or portions, Plaintiff does not allege that he has any health condition that makes the diet inherently inappropriate for him. See, e.g., Fudge v. May, 84 F. App'x 702 (8th Cir. 2003) (plaintiff did not dispute evidence that there was no medical reason he could not be placed on an alternative diet and presented no evidence he was being starved or otherwise injured). He claims

excessive weight loss but as support for that he quotes a response to a grievance confirming that he lost two pounds. ECF Nos. 13, p. 5; 26, p. 1.

The basic component in stating a viable claim is that prison food is not adequately nutritious to preserve an inmate's health. Plaintiff has made only conclusory allegations despite being granted multiple opportunities to amend. His own grievances demonstrate he is receiving a 3,000-calorie diet; and, although a peanut butter sandwich is no longer included with the dinner tray, the prison has substituted the sandwich with another starch. Evidently, Wakulla is not the only prison that stopped serving peanut butter sandwiches. According to one of Plaintiff's grievances, the medical center where he was transferred to has done the same. Therefore, Plaintiff fails to allege sufficient facts demonstrating a serious deprivation of his right to nutritious food that poses a substantial risk to his health. He alleges nothing more than he lost weight and no other resulting medical conditions. Because his allegations failed to establish a constitutional violation, he cannot overcome Defendant's entitlement to qualified immunity.

C. <u>Defendant is Entitled to Qualified Immunity</u>

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right."

Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The court considers: "whether the facts alleged show the officer's conduct violated a constitutional right," and (2) "whether the right was clearly established" at the time of the alleged transgression. Pearson v. Callahan, 555 U.S. 223, 232 (2009); Keith v. Dekalb Cty., 749 F.3d 1034 (11th Cir. 2014). In short, Plaintiff must show that Defendant's failure to include a peanut butter sandwich with his meal violated his constitutionally protected right and the right was "clearly established" at the time.

Dismissal based on qualified immunity is proper "when the complaint fails to allege the violation of a clearly established constitutional right." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002) (citing Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001). While the Court is required to accept the allegations in the complaint as true, once a defendant raises a qualified immunity defense, the burden of persuasion belongs to the Plaintiff. Id. The Court is not required to accept his legal conclusions as true.

For the reasons stated previously, Plaintiff's complaint fails to state any claim of a constitutional violation against the Defendant. Therefore, the Defendant is entitled to qualified immunity. Id.

## VI.   Conclusion and Recommendation

It is respectfully RECOMMENDED that Defendant's Motion to Dismiss for failure to state a claim, ECF No. 26, be GRANTED and the case be DISMISSED and CLOSED. It is further recommended that the Order adopting this Report and Recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

IN CHAMBERS at Tallahassee, Florida, on September 8, 2020.

>  **/s/ Martin A. Fitzpatrick**
>  **MARTIN A. FITZPATRICK**
>  **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).